# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL T. POPPENHOUSE, | ) |
| Plaintiff, | ) |
| v. | ) 02: 08-cv-1487 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

June 30, 2009

**I.     Introduction**

Plaintiff, Daniel T. Poppenhouse, brought this action pursuant to 42 U.S.C. § 1383(c) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied his application for supplemental security income ("SSI") under title II of the Social Security Act ("Act"), 42 U.S.C. § 1381-1383(f).

**II.    Background**

   **A.    Facts**

Plaintiff was born August 11, 1986, and was twenty years old at the time he applied for SSI. Plaintiff has no formal education beyond the eighth grade or any vocational training. Plaintiff has no relevant past work experience. He receives $132 per month in food stamps from the government.

Plaintiff alleges disability as of August 1, 2002, due to obesity, sleep apnea, and enlarged adenoids. During the administrative hearing, Plaintiff testified that he weighed

approximately 589 pounds at a height of 5'10". He reported that his weight has remained the same for about the last five years. The record reflects that Plaintiff has not engaged in substantial gainful work activity prior to or since alleging disability.

### B. Procedural History

Plaintiff filed an application for SSI on September 14, 2005, in which he claimed total disability since August 1, 2002. An administrative hearing was held on November 8, 2007, before Administrative Law Judge James J. Pileggi ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. Karen Krull, M.Ed., an impartial vocational expert, also testified at the hearing.

On December 17, 2007, the ALJ rendered an unfavorable decision to Plaintiff in which he found that Plaintiff had the residual functional capacity to perform the full range of sedentary work and, therefore, was not "disabled" within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner on September 3, 2008, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On October 23, 2008, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred in (1) his consideration of medical evidence; (2) his credibility determination as to Plaintiff's testimony; and (3) his failure to question and consider the testimony of the vocational expert. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.	Legal Analysis**

	A.	Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982).

This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act after an analysis of each of the fives step in the sequential evaluation. In making this

4

determination, the ALJ concluded that: (1) Plaintiff suffered from morbid obesity, but was not plagued by the pain and pulmonary or cardiovascular deficiencies that often accompany morbid obesity; (2) despite his obesity, Plaintiff had the residual functional capacity to perform the full range of sedentary work; (3) the opinions of Plaintiff's treating physician were not supported by the objective record medical evidence; (4) Plaintiff's testimony with regard to the intensity, persistence, and limiting effects of his symptoms was not entirely credible; and (5) jobs exist in significant numbers in the national economy that Plaintiff can perform in view of his age, education, work experience, and residual functional capacity.

**B.   Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

   1.   *The ALJ properly weighed the medical source opinions regarding Plaintiff's residual functional capacity*

Medical determinations can only be rejected by an ALJ on the basis of contradictory medical evidence and not simply because he or she unilaterally chooses to arrive at a different conclusion. *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988). Moreover, in the absence of evidence to the contrary, the opinions of a plaintiff's treating physician will be

given controlling weight. *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991). Yet, when the treating source opinion is not well supported by medically acceptable techniques and lacks consistency with other substantial evidence in the record, an ALJ cannot give controlling weight to the opinions of the treating physician. 20 C.F.R. § 416.927(d)(2) (2008); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008).

Plaintiff argues that the opinion of his treating physician, Todd Jones, M.D., who found that Plaintiff was capable only of less than sedentary work, was not afforded the appropriate weight by the ALJ. The ALJ explained in his decision, however, that the opinion of Dr. Jones was disregarded "because the totality of the record does not support a conclusion of disabling limitations associated with obesity." R. at 17. Undeniably, Plaintiff was a long time patient of Dr. Jones; however, the medical record evidence indicates that the treatment Dr. Jones rendered to Plaintiff was limited to treatment for the flu and a skin rash and never for pain management or the pulmonary and cardiovascular deficiencies that often arise from morbid obesity. R. at 85-87.

Furthermore, Dr. Jones utilized a series of forms that required him only to check the appropriate boxes, making no reference to applicable treatment records or more detailed, objective medical findings. Because Dr. Jones' reports were not accompanied by written reports, the ALJ was correct in determining that these reports carried little weight. *See Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993) ("Where these so-called [residual functional capacity reports] are unaccompanied by thorough written reports, their reliability is suspect.")

Heather J. Porter, D.O., a state agency physician, conducted a consultative examination of Plaintiff on November 14, 2005. Plaintiff reported to Dr. Porter problems with shortness of breath and back and knee pain, and specifically denied that he had any particular difficulty

6

sitting, pushing, pulling, lifting, or carrying. R. at 93. Dr. Porter concluded that Plaintiff had normal strength in his extremities, required no assistive devices to walk, and could maneuver on and off the exam table with little difficulty. .

Plaintiff also reported that he had sleep apnea. Dr. Porter, however, found that this condition was adequately managed by Plaintiff's use of a CPAP machine. R. at 94.

Psychologist Fred Gallo, Ph.D., conducted an assessment of Plaintiff's mental state on October 22, 2007. Dr. Gallo noted that Plaintiff walked approximately one-and-a-half miles per day. As stated by the ALJ, Dr. Gallo's report:

> Does not indicate that the claimant has any serious mental limitations, as [his] IQ remains normal, he does not suffer from severe depression or anxiety, and there is no impairment in memory, thought process, or cognitive abilities.

R. at 15. Dr. Gallo found that Plaintiff was disabled due to obesity and its complications, as well as limited academic achievement, but his actual report does not indicate that Plaintiff has any serious mental limitations. Plaintiff's IQ is normal, he does not suffer from severe depression or anxiety, and there is no impairment of memory, thought processes, or cognitive abilities.

The ALJ disregarded the opinion of Dr. Gallo because (i) his assessment was beyond the scope of his area of expertise as he is not a licensed physician and (ii) his opinion was based on nonmedical and/or non-psychological factors, such as Plaintiff's "limited academic achievement." *See* 20. C.F.R. § 416.927(d)(5) (2008).

In considering the medical evidence before him or her, an ALJ must contemplate all that is contained within the record, and provide adequate explanations for disregarding or rejecting such evidence. *Akers v. Callahan*, 997 F. Supp. 648, 661 (W.D. Pa. 1998). In this instant case, the ALJ considered the totality of the evidence concerning Plaintiff's morbid

obesity and found that the medical opinion rendered by Dr. Porter substantially outweighed the opinion of Dr. Jones, which was not supported by his actual treatment history of Plaintiff, and the medical opinion of Dr. Gallo, who found no mental impairments and drew a conclusion based on factors outside of the area of his expertise. The Court finds that the ALJ properly weighed the medical source opinions with regard to Plaintiff's residual functional capacity and properly disregarded the opinion of Plaintiff's treating physician.

       2.     *There exists substantial evidence in the record to support the ALJ's finding that Plaintiff's testimony as to his functional limitations lacks credibility*

A plaintiff's subjective testimony as to his disability is entitled to great weight only when it is supported by competent, objective medical evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). It is the duty of the ALJ to determine the extent to which a plaintiff is accurately stating his or her degree of pain or other disability. *Hartranft*, 181 F.3d at 362; *see also Dobrowolsky*, 606 F.2d at 409. The ALJ's determination regarding the credibility of testimony is generally given due deference by the courts because of the opportunity of the ALJ to observe claimants firsthand and the ability of such observations to thereafter sharpen the ALJ's focus upon the relevant evidence in the record. *See Wier v. Heckler*, 734 F.2d 955, 961-62 (3d Cir. 1984).

Plaintiff argues that the ALJ failed to adequately explain why the ALJ found the testimony of Plaintiff to lack credibility. The record reflects, however, that the ALJ made a thorough evaluation of Plaintiff's credibility in light of all other evidence before him. Plaintiff testified that he has difficulty sitting, standing, and walking for prolonged periods of time, and must sit in a reclined position for one to two hour periods at intervals during the day.

Notably, Plaintiff admits to possessing the capacity to undertake some household chores such as cooking and washing dishes, although he does suffer from low back pain.

The ALJ determined that, while it could reasonably be expected that Plaintiff's impairments might produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible. R. at 17. Any such determination need only be supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.,* 172 F.3d 303, 304 n.1 (3d Cir. 1999). As previously noted, the ALJ determined that the evaluation of Dr. Porter established that Plaintiff did not have limitations in his mobility and dexterity, contrary to Plaintiff's testimony. R. at 18.

Additionally, the ALJ noted that:

> [Plaintiff] receives limited medical treatment and his credibility is weakened by the fact that he has not sought vocational training or a job. Furthermore, there is no indication that he is participating in a formal weight loss program, and apparently has not done so since the third grade . . . . When seen recently by Dr. Gallo, it was noted that [plaintiff] was walking about [1.5] miles a day.

The ALJ found that Plaintiff's ability to walk for extended periods undermined the notion that Plaintiff was as immobile as his testimony reflected. The ALJ drew an adverse inference from Plaintiff's lack of treatment for his obesity or alleged pain. *See Mason*, 994 F.2d at 1068. Moreover, the ALJ found that Plaintiff's failure to seek vocational training or gainful employment was another factor that undermined his credibility. *See* 20 C.F.R. § 404.929(c)(3) (2008).

For these reasons, and in light of the deference to be given to credibility determinations made by an ALJ, the Court finds and rules that the ALJ made a thorough evaluation of Plaintiff's credibility. Further, the Court finds and rules that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony was not credible.

9

### 3. *The ALJ properly came to the conclusion that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform*

The Social Security Administration has formulated Medical-Vocational Guidelines that establish the types and number of jobs that exist in the national economy for individuals with certain impairments. In determining whether a plaintiff is capable of performing work at a particular level, the United States Supreme Court has upheld the use of the Medical-Vocational Guidelines by the ALJ. *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). When a plaintiff suffers from certain nonexertional limitations (e.g., difficulty tolerating some physical features of the work setting), the Medical-Vocational "grids" are appropriate guidelines and will often be supplemented by the testimony of a vocational expert. *Sykes v. Apfel*, 228 F.3d 259, 269-70 (3d Cir. 2000).

Plaintiff argues that the ALJ erred when he failed to have a vocational expert testify at the hearing. However, Karen Krull, M.Ed., a vocational expert, was present at the hearing and testified in response to a hypothetical posed to her by Plaintiff's attorney. R. at 137. Our appellate court has stated that *Heckler* "stands for the broad proposition that the Commissioner can satisfy its burden of proof regarding availability of jobs in the national economy via rulemaking rather than requiring actual evidence on a case-by-case basis." *Allen v. Barnhart*, 417 F.3d 396, 402-03 (3d Cir. 2005). Accordingly, when faced with nonexertional limitations, an ALJ is permitted to use the Medical-Vocational Guidelines in conjunction with Social Security Rulings (SSRs), in lieu of vocational expert testimony, to determine a plaintiff's occupational job base so long as the SSRs utilized are neither arbitrary nor capricious. *Id.* at 403, 404.

After a careful consideration of the record evidence, the ALJ determined that Plaintiff possessed the residual functional capacity for the full range of sedentary work. R at 16. Sedentary work involves lifting no more than ten pounds, sitting for six hours in an eight-hour workday, and standing or walking for one to two hours. 20 C.F.R. § 404.967(b) (2008). Light stooping may be required in sedentary work, but the record medical evidence reflects that Plaintiff is able to stoop at least occasionally. R. at 98, 102, 110. Therefore, the ALJ found that Plaintiff had no exertional limitations for the full range of sedentary work.

Next, the ALJ determined whether Plaintiff had any nonexertional limitations. Pursuant to SSR 85-15, the ALJ relied upon section 204.00 in the Medical-Vocational Guidelines. R. at 19. Nonexertional activities such as climbing, balancing, or crouching are not usually required in sedentary work and any limitations in these categories would not affect a plaintiff's ability to perform sedentary activities. SSR 83-14, 1983 WL 31254 at *2. Because nonexertional activities are not necessary for sedentary work, the Court finds that it was not necessary for the ALJ to have heard testimony from the vocational expert and the ALJ was free to make his determination based upon the Medical-Vocational "grids" and applicable Social Security Rulings. *See Allen*, 417 F.3d 396 at 403.

However, it is of import to note that the vocational expert did testify in response to questioning by Plaintiff's attorney. Although any number of hypothetical questions could be posed to a vocational expert, his or her testimony "concerning . . . alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). Any "tainted" hypothetical given to a vocational expert fatally undermines whatever conclusion could reasonably have been drawn from it. *Id.* at 219.

The attorney for Plaintiff posed the following hypothetical to the vocational expert:

> Q: [I]f we had an individual of Claimant's age, education, work background of there not being any work, if this individual had difficulty with sitting, standing, and walking and would have to recline back as much as 45 degrees for three to four hours during the wakeful day at unpredictable times during the course of the day, would this individual be capable of sustaining substantial gainful work activity?

R. at 137. In response, the vocational expert testified that no jobs would be available for this hypothetical individual. This hypothetical presents an individual who has difficulties sitting, standing, and walking such that his mobility was considerably impaired, in addition to suffering from debilitating pain or pulmonary-cardio deficiencies.

The ALJ found that the hypothetical did not accurately portray Plaintiff's physical and mental impairments as supported by the medical evidence of record. Thus, the Court finds that the ALJ did not err when he disregarded that testimony of the vocational expert.

## IV.      Conclusion

It is undeniable that Plaintiff has a number of impairments and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform the full range of sedentary work.

For the hereinabove stated reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL T. POPPENHOUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 08-cv-1487 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

**AND NOW**, this 30th day of June, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Daniel T. Poppenhouse (Document No. 9) is **DENIED**;

2. The Motion for Summary Judgment field by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 11) is **GRANTED**; and

3. The Clerk will docket this case as closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Terry K. Wheeler
Email: tkwheeler_law@yahoo.com

Jessica Smolar, Assistant U.S. Attorney
Email: Jessica.smolar@usdoj.gov